# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| TIMOTHY J. SANDERS, | ) | |
| | ) | |
| PLAINTIFF, | ) | No. 3:13-01294 |
| | ) | **Judge Trauger/Brown** |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| DEFENDANT. | ) | |

**To: The Honorable Judge Aleta A. Trauger, United States District Judge**

### REPORT AND RECOMMENDATION

For the reasons explained herein, the Magistrate Judge **RECOMMENDS** that the Plaintiff's Motion for Judgment on the Administrative Record (the record) (Docket Entry (DE) 16) be **DENIED**, and the Commissioner's decision be **AFFIRMED**.

### I.          Procedural History

The Plaintiff originally filed for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on June 18, 2009. (DE 12, pp. 69-70).[1] The Commissioner denied the claim on November 10, 2009 and the Plaintiff appealed no further. (DE 12, p. 75). The Plaintiff filed for DIB and SSI one year later on June 08, 2010. (DE 12, pp. 148; 155). He claimed an onset date of May 19, 2010 and disability due to: arthritis in his knees, back pain, and a speech impairment. (DE 12, pp. 155; 201). The Commissioner denied the claim twice. (DE 12, pp. 86; 96). The Plaintiff requested a hearing before an Administrative Law Judge (ALJ) and, on July 10, 2012, appeared before the ALJ, Elizabeth Neuhoff. (DE 12, pp. 31; 102). Also appearing

---

[1] Page numbers referring to the record herein reflect the Bates Stamp.

were Lisa Courtney (Ms. Courtney), the vocational expert (VE) and Robert Parker (Mr. Parker), the Plaintiff's attorney. (DE 12, p. 31). At the hearing, the Plaintiff amended his onset date to August 10, 2010, the last day that he worked. (DE 12, p. 37). On July 18, 2012, the ALJ decided that the Plaintiff was not disabled under the Social Security Act (the Act). (DE 12, p. 10). The Plaintiff's request that the Appeals Council review the decision was denied. (DE 12, pp. 1; 7).

On November 21, 2013, the Plaintiff timely brought the instant action and filed a Motion to Proceed *in forma pauperis*, which the Court granted. (DE 1-3). On March 05, 2014, the Defendant filed the Answer and the record. (DE 11-12). On May 05, 2014, the Plaintiff filed the Motion for Judgment on the Record and Memorandum in Support of the Motion pursuant to 42 U.S.C. §§ 405(g) and 1383(c), seeking judicial review of the final decision of the Social Security Administration (the SSA), as set out by the ALJ. (DE 16). On July 23, 2014, the Defendant filed a Response in Opposition. (DE 23). The Plaintiff filed a Reply and the Court granted, in part, the Defendant's Motion for Leave to file a Sur-reply, which she did on August 20, 2014 (DE 26-29). Therefore, the matter is now properly before the Court.

## II. Review of the Record

### A. Relevant Medical Evidence

Relevant evidence begins on August 10, 2010. *See* 20 C.F.R. §§ 404.1512(d)(2) and 416.912(d)(2). Several reports slightly predate this, presumably because of the May 19, 2010 filing date, and are included here. Reports from the Plaintiff's 2009 application are not.

On July 19, 2010, the Plaintiff presented to Matthew Walker Comprehensive Health Center (MWCHC) and was prescribed medication for knee pain. On August 06, 2010, the Plaintiff presented to MWCHC with reports of right shoulder pain after falling at work and underwent an x-ray. (DE 12, p. 463). On August 18, 2010, the Plaintiff presented to Nashville

General Hospital with knee and right shoulder pain. (DE 12, p. 476). The provider reported that the Plaintiff was a low fall risk and an x-ray showed osteoarthritis of the knees and shoulder, narrowing at the shoulder joints, and no dislocation. (DE 12, pp. 480; 548). A later MRI showed a fracture that was healing. (DE 12, p. 521). The Plaintiff continued to see providers at MWCHC for knee pain, shoulder pain, and management of his hypothyroidism. (DE 12, pp. 513-35; 586). On October 14, 2010, a provider at MWCHC noted that the Plaintiff had "the symptoms of a major depressive episode." (DE 12, p. 524). In December of 2010, the Plaintiff began a grief counseling program. (DE 12, p. 590).

On March 10, 2011, the Plaintiff was treated at the Nashville General Emergency Room for a hernia and was diagnosed with hypertension. (DE 12, p. 540). On September 16, 2011, Richard White, M.D. (Dr. White) completed a Treating Source Statement in which he reported that the Plaintiff could lift or carry up to 49 pounds occasionally, rarely bend, squat, crawl or climb, and that his obesity limited his activities. (DE 12, p. 583). Throughout 2011, the Plaintiff continued to see providers at Nashville General Hospital. (DE 12, pp. 630-87). On December 15, 2011, Thomas Limbird, M.D. (Dr. Limbird) also completed a Treating Source Statement in which he reported that the Plaintiff could lift or carry up to 19 pounds occasionally, and never bend, squat, crawl or climb. (DE 12, p. 585).

On January 31, 2012, an x-ray of the left elbow showed joint narrowing and osteoarthritis. (DE 12, p. 632). On February 06, 2012, Dr. Limbird performed left ulnar nerve surgery at the elbow to treat pain in the Plaintiff's left hand. (DE 12, p. 622). After the surgery, the Plaintiff continued to experience "some subjective loss of sensation which may improve or not." (DE 12, p. 602). The Plaintiff continued to experience knee problems and Dr. Limbird prescribed an anti-inflammatory medication on March 29, 2012. (DE 12, p. 602). On May 17,

2012, providers documented the Plaintiff's degenerative disc disease of the lower spine. (DE 12, p. 592).

**B.      Consultative Examiner Assessments on behalf of Disability Determination Services**

On August 03, 2010, Lloyd Huang, M.D. (Dr. Huang) completed a medical consultative examination. (DE 12, p. 458). Dr. Huang reported that the Plaintiff had reduced lumbar spine extension and flexion, and normal range of motion at the hips, knees, and ankles. (DE 12, p. 458). He noted that the Plaintiff walked with a moderate limp, which "improved when [he was] observed leaving the office." (DE 12, p. 458). Dr. Huang reported that the Plaintiff could "occasionally lift 20 pounds, frequently lift 10 pounds, and stand and walk for 4 hours in an 8 hour day and sit for 5 to 6 hours in an 8 hour day." (DE 12, p. 459). He would preclude the Plaintiff from working with "heavy machinery and temperature extremes . . . ." (DE 12, p. 459).

On August 09, 2010, Wanda Webb, Ph. D. (Ms. Webb) completed a physical Residual Functional Capacity (RFC) assessment. (DE 12, pp. 467; 537). She noted "slight" limitations from a speech impairment. (DE 12, p. 471).

On September 17, 2010, Alice Garland (Ms. Garland) completed a psychological consultative examination. (DE 12, p. 458). The Plaintiff reported that he gave up his driver's license after a car accident, that he is able to cook for himself to some extent, and that his sister may help him with laundry or shopping. (DE 12, p. 483). Ms. Garland noted that the Plaintiff stuttered and diagnosed the Plaintiff with dysthymia[2] and "borderline to low average intellectual functioning." (DE 12, p. 484). She found that the Plaintiff "may have moderate if not marked limitation in ability to do complex and detailed work." (DE 12, p. 484). She also found that the

---

2 Dorland's Illustrated Medical Dictionary 550 (Elsevier 2012) (1900) (Dysthmia, Dysthymic Disorder: "a mood disorder characterized by depressed feeling (sad, blue, low), loss of interest or pleasure in one's usual activities, and by at least some of the following: altered appetite, disturbed sleep patterns, lack of energy, low self esteem, poor concentration or decision-making skills, and feelings of hopelessness. Symptoms have persisted for more than 2 years but are not severe enough to meet the criteria for major depressive disorder.").

Plaintiff's "[a]bility to persist and concentrate was moderately to markedly limited today but . . . the [Plaintiff] may have been trying to exaggerate [cognitive deficiencies]." (DE 12, p. 484).

On September 23, 2010, Jayne Dubois, Ph. D. (Dr. Dubois) completed a psychiatric review of the record and mental RFC assessment. (DE 12, pp. 486; 500; 536). She noted that the totality of the evidence suggested that the Plaintiff has moderate mental health limitations, and mild to moderate limitations in activities of daily living. (DE 12, p. 498). She noted that the Plaintiff's reports are "partially credible." (DE 12, p. 498). Moreover, she found that the Plaintiff can understand and remember simple and 1 to 3 step detailed tasks, that he can concentrate and persist for a 2 hour time period, can interact with people and coworkers, and can set limited goals and adapt to infrequent change. (DE 12, p. 502).

On October 28, 2010, James Gregory, M.D. (Dr. Gregory) completed a physical RFC assessment. (DE 12, p. 504; 580). He found that the medical evidence did not support Dr. Huang's restriction of walking and noted that even considering the Plaintiff's osteoarthritis and obesity, he could walk for 6 hours. (DE 12, p. 510).

### C.     Testimonial Evidence

#### 1.     Plaintiff and Witness Testimony

On July 10, 2012, the Plaintiff appeared before the ALJ. (DE 12, p. 31). When the ALJ asked the Plaintiff what caused him to leave his job in August of 2010, the Plaintiff testified, "I reinjured my right arm at the job . . . and when I went to the doctor, [he] x-rayed it and told me that . . . part of my rotator cuff had been removed and I could only lift 10 pounds." (DE 12, p. 38). The Plaintiff testified that he is unable to drive because he never obtained a driver's license. (DE 12, p. 40-41). The Plaintiff testified that when he attends church service over 2 to 3 hours, he experiences pain but testified, "I learn to try to deal with it." (DE 12, p. 41). He testified that

his hobbies include reading and playing a computer game. (DE 12, p. 41). He testified, "I'm not good at a computer. I can just barely use it." (DE 12, p. 41). The ALJ asked the Plaintiff if he has a Facebook account, to which the Plaintiff testified that he does. (DE 12, p. 41). When asked to describe why he is disabled, the Plaintiff testified, "since my knees are not working no more, I'm unable, what am I able to do? Since I am unable to lift with my right shoulder and with all the other medical problems . . . I know that nobody will hire a person with a broken down body." (DE 12, p. 42). He testified that he applied for less physically demanding work at Goodwill and was put on a waiting list. (DE 12, p. 42).

The Plaintiff testified that he "can only sit for . . . 30 minutes to about an hour before [his] back starts hurting. . ." and that he can only stand for "about an hour before . . .[his] knees will start to buckle." (DE 12, p. 43). He testified that he can walk for 20 minutes. (DE 12, p. 44). He testified that he had been receiving medical treatment at Nashville General Hospital twice a month since April of 2012 and that prior to that he had been receiving treatment at the MWCHC. (DE 12, pp. 42-43). The Plaintiff testified that he takes Synthroid because he has had his thyroid removed and Meloxicam for osteoarthritis. (DE 12, p. 45). He testified that he recently started taking Diclofenac for osteoarthritis. (DE 12, p. 45). He testified that he does not have side effects from the medications. (DE 12, p. 46).

When the ALJ asked the Plaintiff to describe his pain, he testified that the worst pain is in his back, that he experiences tingling every time he lies down or walks, and that his medication relieves the pain "a little." (DE 12, p. 46). He testified that over the counter medications, heat and ice, physical therapy, and a TENS unit that "shoots electrical impulses into your muscles" have been unsuccessful. (DE 12, pp. 45-46). The Plaintiff testified that he lives with his sister, is unable to help with chores, and is unable to make breakfast or coffee. (DE 12, pp. 47-48). He

testified that his sister cooks, does the laundry, takes out the trash, goes shopping, and helps him bathe. (DE 12, pp. 47-48; 54). He testified that he graduated from high school. (DE 12, p. 48).

Next, the Plaintiff testified on direct examination by Mr. Parker. He testified that he has had surgery on both knees, that he has pain in his knees and feet, that his right "big toe goes numb," and that his knee "pops out." (DE 12, pp. 50-51). He testified that as a result of his knee problems, he must use a cane. (DE 12, p. 51). He testified that he had right shoulder surgery in 2008 and that he is unable to lift his right arm over his head. (DE 12, p. 52). He testified that on one occasion he was treated for back pain at the hospital. (DE 12, p. 52). He testified that after surgery on his left hand, he has experienced numbness in his left pinky and ring fingers and that, as a result, he has trouble gripping. (DE 12, p. 53). He testified that he is depressed daily as a result of his thyroid medication and "trying to find something to do." (DE 12, p. 54).

## 2.      Vocational Expert Testimony

The ALJ presented the VE with a hypothetical scenario:

> A person of the [Plaintiff's] age, educational background, and work experience . . . . This person can lift or carry 20 pounds on occasion and 10 frequently. Sit, stand, or walk 6 hours total each. Can occasionally climb ladders, ropes, or scaffolding. Can frequently perform all other postural activities. This person is further limited to simple work with simple instructions and occasional change in the workplace.

(DE 12, p. 57). The VE testified that the Plaintiff could perform his past work as "a floor tech." (DE 12, p. 58). The VE testified that the Plaintiff could also work as (1) a hand stemmer, with 1,600 employed in Tennessee and 55,000 employed nationally in this job; (2) a lamp tester, with 1,800 employed in Tennessee and 65,000 employed nationally in this job; or (3) an assembler, with 3,000 employed in Tennessee and 100,000 employed nationally in this job. (DE 12, p. 59).

The ALJ then presented the VE with a second hypothetical, "[t]his person can lift or carry 20 pounds on occasion and 10 frequently. Stand or walk 4 of 8 hours. Can sit 5 to 6 hours. This

person can also have no exposure to hazards in the workplace or temperature extremes." (DE 12, p. 59). The VE testified that, under this hypothetical, the Plaintiff could perform work as (1) a sorter, with 1,500 employed in Tennessee and 45,000 employed nationally in this job. (DE 12, p. 60). The VE testified that the Plaintiff could work as a stemmer or assembler, and reduced the number of available jobs to account for the limitations in the hypothetical. (DE 12, p. 60).

The ALJ presented the VE with a third hypothetical that the VE and the ALJ referred to as "strange," and under which the VE testified that there would be no jobs. (DE 12, pp. 60-63). The ALJ presented the VE with a final hypothetical, "[t]his person can sit 4 to 8 hours, stand or walk for 3 hours total, no pushing or pulling with the right hand, occasionally lift up to 19 pounds and occasionally carry up to 9 pounds. Never bend, squat, crawl, or climb, and no work around unprotected heights." (DE 12, p. 64). The VE testified that, under this hypothetical, the Plaintiff could not perform any jobs. (DE 12, p. 64). On examination by Mr. Parker, the VE testified that the Plaintiff would need to work 7 hours daily to be full-time and that a limitation of occasional use of the left hand would decrease the number of jobs. (DE 12, pp. 65-66).

### III.     Analysis

### A.     Standard of Review

The issue before the Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), is limited to whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the ALJ applied the correct legal standards. *Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 434 (6th Cir. 2010) (unpublished opinion) (quoting *Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir.1994)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Carrelli*, 390 F. App'x at 434 (quoting *Cutlip,*

25 F.3d at 286). The Court "may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Carrelli*, 390 F. App'x at 434. If there is "substantial evidence" in the record that supports the ALJ's decision and the ALJ applied the correct legal standard, then the Court must affirm the final decision, "even if the Court would decide the matter differently, and even if substantial evidence also supports the [Plaintiff's] position." *Carrelli*, 390 F. App'x at 434 (citing *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.1986) (en banc)).

## B.    Administrative Proceedings

Disability is defined for Title II DIB and Title XVI SSI claims as an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1505 and 416.905. The ALJ uses a 5-step evaluation for both DIB and SSI claims to determine whether the Plaintiff meets this definition of "disabled."

i.   If the Plaintiff is engaged in substantial gainful activity, the Court will find that the Plaintiff is not disabled.

ii.  If the Plaintiff *does not* have a severe medically determinable physical or mental impairment meeting the duration requirement or a combination of such impairments, the Court will find that the Plaintiff is not disabled.

iii. If the Plaintiff *does* have an impairment(s) that meets or equals one of the listings of impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (Appendix 1) and meets the duration requirement, the Court will find that the Plaintiff is disabled.

iv.  The court considers the Plaintiff's RFC and past relevant work. If the Plaintiff can still perform their past relevant work, the Court will find that he is not disabled.

v.   The Court considers the Plaintiff's RFC, age, education, and experience to determine if the Plaintiff can perform work *other than* past relevant work. If the Plaintiff can make an adjustment, the Court will find that he is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).

The Plaintiff has the burden of proof for steps 1 to 4. *Carrelli*, 390 F. App'x at 435. The burden shifts to the ALJ at step 5, where the ALJ must "identify a significant number of jobs in the economy that accommodate the [Plaintiff's] RFC and vocational profile." *Carrelli*, 390 F. App'x at 435 (citation omitted). To meet this burden, the ALJ may use the medical-vocational guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2, known as "the grid." 20 C.F.R. §§ 404.1569 and 416.969; *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003). The ALJ may use the grid as a guide or rely on it in reaching a conclusion, depending upon the Plaintiff.

If a Plaintiff does have nonexertional limitations that "restrict . . . [his] performance of a full range of work at the appropriate [RFC]," then these limitations must be considered and the grid may be used as a guide. *Wright*, 321 F.3d at 616 (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528-29 (6th Cir. 1981)). In those cases, "the ALJ [is] entitled to rely on the testimony of a [VE] in reaching his decision" as to whether the Plaintiff is disabled or whether the Plaintiff is not disabled and a significant number of jobs exist that the Plaintiff can perform. *Range v. Soc. Sec. Admin.*, 95 F. App'x 755, 757 (6th Cir. 2004) (unpublished opinion).

If the Plaintiff does not have nonexertional limitations, and "the findings of fact made with respect to a[n] . . . individual's vocational factors and [RFC] coincide with all of the criteria of a particular rule [in the grid], the rule directs a conclusion as to whether the individual is or is not disabled." *Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010) (unpublished opinion) (quoting Appendix 2 at § 200.00(a)).

### C.     Notice of Decision

On July 18, 2012, the ALJ made the findings of fact and conclusions of law below.

1. The claimant meets the insured status requirements of [the Act] through September 30, 2015.

2. The claimant has not engaged in substantial gainful activity since August 10, 2010, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative joint disease of the knees, degenerative disc disease of the lumbar spine, mild osteoarthritis of the shoulders, obstructive sleep apnea, morbid obesity, speech impairment, and dysthymic disorder (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. [T]he claimant has the [RFC] to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). He can lift or carry 20 pounds occasionally and 10 pounds frequently. He can sit, stand, or walk for 6 hours total each. He can occasionally climb ladders, ropes, and scaffolds. He can frequently perform all other activities. He is limited to simple work with simple instructions, and occasional change in the workplace.

6. The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

7. The claimant . . . was 45 years old, which is defined as a younger individual 18-49, on the alleged disability onset date. (20 C.F.R. §§ 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See [Social Security Ruling (SSR)] 82-41 and 20 C.F.R. Part 404, Subpt. P, Appendix 2).

10. Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the regional and national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in [the Act], from August 10, 2010, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

(DE 12, pp. 15-16; 18; 21-23). On July 18, 2012, the ALJ made the specific decision:

1. Based on the application for a period of disability and [DIB] protectively filed on May 19, 2010, the claimant is not disabled under sections 216(i) and 223(d) of [the Act].

2. Based on the application for SSI protectively filed on May 19, 2010, the claimant is not disabled under section 1614(a)(3)(A) of [the Act].

(DE 12, p. 23).

## IV.      Claims of Error

**A.      The ALJ failed to properly consider all of the Plaintiff's impairments and failed to provide sufficient reasons for not finding certain impairments to be severe.**

The Plaintiff argues that the ALJ failed to find peripheral vascular disease (PVD) and major depression to be severe impairments and failed to state why. (DE 16-1, p. 8). He argues that "[t]hese impairments cause additional limitations which affect the Plaintiff's ability to perform at the RFC assigned to [him]. (DE 16-1, p. 8). The Defendant argues that the Plaintiff fails to provide any support for his claim. (DE 23, p. 11). The Defendant cites a Sixth Circuit case for the premise that issues may be deemed waived where a party "mention[s] a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (DE 23, p. 10) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 996 (6th Cir. 1997) (citation omitted)).

*McPherson v. Kelsey* is not a Social Security case and some Courts have found that "a lack of detail and specificity . . . , [is not an] appropriate basis to deem Plaintiff's arguments or statements of error waived." *James v. Comm'r of Soc. Sec.,* No. 5:10-CV-02448, 2011 WL 5971032, at *10 (N.D. Ohio Nov. 29, 2011). However, the Sixth Circuit recently cited *McPherson v. Kelsey* and found that a Social Security Plaintiff did waive an issue where she presented an argument "but [did] not elaborate or provide any further development of the argument." *Moore v. Comm'r of Soc. Sec.,* 573 F. App'x 540, 543 (6th Cir. 2014) (unpublished opinion) (citing *United States v. Stewart,* 628 F.3d 246, 256 (6th Cir.2010) (quoting *McPherson,*

125 F.3d at 995–96))). Other Courts have recently relied on this edict from *Moore v. Comm'r of Soc. Sec.* in finding that a Plaintiff did waive an issue where he or she failed to cite any legal authority for an argument. *Burns ex rel. J.A.B. v. Comm'r of Soc. Sec.,* No. 1:13-CV-572, 2014 WL 5035351, at *3 (W.D. Mich. Oct. 8, 2014); See also *Weldon v. Comm'r of Soc. Sec.,* No. 1:13-CV-402, 2014 WL 4956229, at *8 (W.D. Mich. Oct. 2, 2014). Yet, these Courts still went on to address the merits of an otherwise waived argument.

Here, the Plaintiff cites legal authority but not evidence and he fails to elaborate or develop his argument. This claim of error could be deemed waived, but also fails on the merits. The Plaintiff asserts that " 'the step 2 severity regulation . . . has been construed as a *de minimis* hurdle . . . [A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability. . . .' " (DE 16-1, p. 8) (citing *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir.1988). Evidence of an impairment means "medical evidence showing that [the Plaintiff has] an impairment(s) and how severe it is during the time [the Plaintiff] say[s] that [he or she is] disabled. [The plaintiff] must provide evidence . . . showing how [his or her] impairment(s) affects [his or her] functioning. . . ." 20 C.F.R. §§ 404.1512(c) and 416.912(c).

Regarding the ALJ's burden to evaluate evidence, when the ALJ evaluates a mental impairment, "the regulations require the ALJ to follow a 'special technique' to assess the severity of the impairment." 20 C.F.R. §§ 404.1520a and 416.920a. This technique requires the ALJ to first evaluate the plaintiff's "symptoms, signs, and laboratory findings to determine whether [the plaintiff] has a medically determinable mental impairment(s)." 20 C.F.R. §§ 404.1520a(b)(1) and § 416.920a(b)(1). Next, the ALJ must "specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) . . . ." 20 C.F.R. §§ 404.1520a(b)(1) and 416.920a(b)(1). Then, the ALJ must rate the degree of functional limitation

in (1) activities of daily living (ADLs); (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520(c)(3) and 416.920(c)(3). Finally, the ALJ must indicate the "significant history . . . , and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. §§ 404.1520a(e)(4) and 416.920a(e)(4).

Here, the record shows that the Plaintiff failed to meet his *de minimis* hurdle. He lists PVD and major depression among the 17 diagnoses. (DE 16-1, p. 3). Yet, he never cites where these diagnoses appear in the record and, more importantly, fails to state how they affect his functioning or his ability to work. (DE 16-1, p. 8). He fails to cite the record at all in making this claim. Moreover, regarding PVD, the record shows that this is listed as a chronic condition with no other details. (DE 12, pp. 434; 436; 449; 451). Therefore, there is substantial evidence to support the ALJ's determination that PVD is not a severe impairment.

Regarding depression, the Plaintiff's argument that the ALJ should have found major depressive disorder to be a severe impairment fails. First, the ALJ did find that the Plaintiff has the severe impairment of dysthymic disorder, which is defined as "a mood disorder . . . not severe enough to meet the criteria for major depressive disorder."[3] (DE 12, p. 15). Moreover, the record shows that the ALJ completed a textbook "special technique" in evaluating the Plaintiff's mental impairment. As stated, the ALJ found that the Plaintiff has severe dysthymic disorder. (DE 12, p. 15). The ALJ documented the findings from the October 14, 2010 examination when the Plaintiff reported that "it is very difficult to meet home, work, or social obligations" and the provider noted that the Plaintiff had "the symptoms of a major depressive episode." (DE 12, p. 524). Finally, the ALJ noted the Plaintiff's mild to moderate limitations in

---

3 *See Supra* note 2.

ADLs; social functioning; and concentration, persistence, or pace. (DE 12, p. 17). She noted that the Plaintiff had no episodes of extended decompensation. (DE 12, p. 17). Therefore, there is substantial evidence to support the ALJ's determination that major depressive disorder is not a severe impairment.

**B.      The ALJ failed to include a function-by-function assessment in the RFC assessment.**

The Plaintiff argues that the ALJ failed to perform a "function-by-function" assessment as required under SSR 96-8P, and that the ALJ specifically failed to provide limitations regarding pushing or pulling. (DE 16-1, p. 9). The Plaintiff does not clarify whether pushing and pulling refers to the arms and hands or the legs and feet. In his Reply, the Plaintiff argues that his limitations are documented in the record as the 2007 right shoulder surgery, the August 06, 2010 x-ray after the Plaintiff fell onto his right shoulder, the August 18, 2010 x-ray showing shoulder joint narrowing, the January 31, 2012 x-ray of the left elbow showing joint narrowing and osteoarthritis, the February 06, 2012 left ulnar nerve surgery, and the May 17, 2012 finding of degenerative disc disease of the lower spine. (DE 26, pp. 8).

Pursuant to SSR 96-8P, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945." SSR 96-8P, 1996 WL 374186, at *1. Those functions include physical, mental, and other abilities. 20 C.F.R. §§ 404.1545(b)-(d) and 416.945(b)-(d). The ALJ must "first assess the nature and extent of [the Plaintiff's] . . . limitations and then determine [the Plaintiff's] [RFC] . . ." and must do so based on the entire record. 20 C.F.R. §§ 404.1545 and 416.945.

Here, the record shows that the ALJ considered the evidence, completed a "function-by-function" analysis, and analyzed the Plaintiff's limitations before determining the RFC. The

ALJ considered the Plaintiff's history, the examiners' reports, the medical source statements, the testimony, and statements from the plaintiff's friend, Ms. Renee McGree. (DE 12, pp. 15-21). Specifically regarding the functions that would require limitations of pushing or pulling, the ALJ noted the Plaintiff's right shoulder and left wrist surgeries. (DE 12, pp. 15; 19). She noted Dr. Limbird's report that the Plaintiff could push and pull with his left but not his right hand, and could use his right but not his left foot repetitively. (DE 12, p. 585). However, she gave his report little weight and indicated that the report was "not consistent with the objective medical findings," including radiology results, normal physical examinations, and reports of being able to lift 20 pounds. (DE 12, p. 20). The ALJ also noted that the Plaintiff had full range of motion in his right shoulder and that on November 17, 2010, his shoulder pain was " 'largely resolved.' " (DE 12, p. 19). On the same date, he also had full range of motion in his left knee and a later examination in May of 2011 showed "full range of motion in all of his extremities." (DE 12, p. 19). Finally, the ALJ limited the RFC to light work, which provides for "***some*** pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b) and 416.967(b) (emphasis added).

Therefore, the record provides substantial evidence that the ALJ considered the nature and extent of the Plaintiff's limitations as they pertain to pushing or pulling as part of a function-by-function analysis. The records provides substantial evidence to support the ALJ's conclusion that the RFC did not need further limitations in light of the objective medical evidence.

### C. The ALJ failed to appropriately weigh various opinions.

#### 1. Dr. Schmidt

The Plaintiff argues that the ALJ failed to consider the opinion of Andriana Schmidt, M.D. (Dr. Schmidt), who examined the Plaintiff on August 08, 2009. (DE 12, p. 387; DE 16-1, p. 9). The Defendants argue that Dr. Schmidt's opinion was prior to the relevant time period and

that a review could have constituted "a de factor reopening" of the prior decision. (DE 23, p. 18).

The prior decision that the Defendant refers to is the Plaintiff's original application for benefits

one year before the application at issue herein, on June 18, 2009. (DE 12, pp. 69-70).

> When presented with an application for benefits after a prior application has been denied, an ALJ must consider how the existence of the prior decision impacts the second application. If the claimant can show "good cause" such as new and material evidence that relates back to the prior period and meets the applicable time limit, the ALJ can reopen the prior decision and readjudicate the prior period.

*Gay v. Comm'r of Soc. Sec.,* 520 F. App'x 354, 357 (6th Cir. 2013) (unpublished opinion) (citing 20 C.F.R. §§ 404.988 and 416.1488.).

> A decision not to reopen is within the ALJ's discretion and is unreviewable by the courts unless a constitutional issue is involved. . . . In the absence of reopening, the ALJ adjudicates the subsequent period, but is bound by relevant factual findings made with respect to the prior period unless there is new and material evidence as to those findings.

*Gay*, 520 F. App'x at 357-58 (citation omitted). To be clear, an ALJ is so bound when there has

been a determination by a previous ALJ or AC. See *Drummond v. Comm'r of Soc. Sec.,* 126 F.3d

837, 842 (6th Cir. 1997); Acquiescence Ruling AR 98-4(6), 1998 WL 283901.

Here, the Plaintiff never requested that the ALJ re-open the prior decision. There is no

indication that ALJ Neuhoff decided to independently do so. There is no constitutional issue

alleged or apparent. Finally, and most importantly, there was no hearing on the initial application

and no previous ALJ decision to bind ALJ Neuhoff.  Therefore, since Dr. Schmidt's August 08,

2009 opinion is from before the relevant period beginning August 10, 2010, the record provides

substantial evidence that the ALJ did not err in choosing not to consider the opinion.

### 2.      Dr. White and Dr. Limbird

The parties dispute whether the ALJ properly weighed the opinions of the Plaintiff's

treating physicians, Dr. White and Dr. Limbird, as required under SSR 96-2P and 20 C.F.R. §§

404.1527(c) and 416.927(c).[4]  (DE 16-1, p. 11; DE 23, p. 22). The Plaintiff argues that the ALJ's reasoning was vague and that "[b]ecause these opinions were not actually contradicted by other medical evidence, they must be given complete deference. . . ." (DE 16-1, p. 13) (citing *Walker v. Sec'y of Health & Human Servs.,* 980 F.2d 1066, 1070 (6th Cir. 1992)). The Defendant argues that the ALJ did provide appropriate reasoning for the weight that he assigned to these opinions and that *Walker v. Sec'y of Health & Human Servs.* has been superseded. (DE 23, p. 23).

Pursuant to the "treating physician rule," "[i]f [an ALJ] find[s] that a treating source's opinion *on the issue(s) of the nature and severity of [the plaintiff's] impairment(s)* is *well-supported* . . . and is *not inconsistent* with the other substantial evidence . . . , [the ALJ] will give it controlling weight."  20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) (emphasis added); *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004).

If an ALJ *does not* give a treating source's opinion controlling weight, then the ALJ must provide good reasons for the weight he or she does assign. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). The ALJ must also consider the following factors in deciding what discounted weight to give to the treating sources' opinion:  whether there was an examining relationship; the length of the treatment relationship and frequency of examination; the nature and extent of the relationship; supportable medical evidence; evidence that is consistent with the record; and the source's specialization. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), 404.1527(c)(3)-(6), 416.927(c)(2)(i)-(ii) and 404.1527(c)(3)-(6). The ALJ will also consider these factors when determining what weight to give to the opinion of a non-treating or non-examining source even though those opinions "are never assessed for 'controlling weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013), reh'g denied (May 2, 2013).

---

4 The Magistrate Judge notes that the Plaintiff cites 20 C.F.R. §§ 404.1527(d) and 416.927(d), but refers to the factors listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c). The Magistrate Judge construes the Plaintiff's argument to be referring to section (c) and notes that the previous versions of the regulation listed the factors in section (d).

Here, the ALJ was explicit in stating that "little weight is given to the medical source statements of [Dr. White and Dr. Limbird], whose assessed limitations are not consistent with the objective medical findings . . . ." (DE 12, p. 20). Therefore, their opinions would not warrant complete deference regardless of whether *Walker v. Sec'y of Health & Human Servs.* has been superseded. Moreover, the record shows that the ALJ explained that in light of the inconsistency between the medical evidence and the limitations in these opinions, she was assigning "little weight" to the opinions of Dr. White and Dr. Limbird overall. (DE 12, p. 20). The record shows that this reasoning was clear. The ALJ was also clear in explaining that she assigned "great weight" to the part of Dr. Limbird's opinion in which the Plaintiff was not precluded from all work because Dr. Limbird "specifically indicated that the [Plaintiff's] symptoms do not prevent him from working . . . ." (DE 12, p. 20).

Finally, the record shows that the ALJ considered the 20 C.F.R. §§ 404.1527and 416.927 factors. The ALJ was aware that Dr. White and Dr. Limbird had a treating relationship with the Plaintiff since they completed "Treating Source Statements." (DE 12, pp. 582-85). The ALJ knew that the nature of the relationship with Dr. Limbird involved the Plaintiff's ulnar nerve surgery. (DE 12, p. 622). As discussed in the preceding paragraph, the ALJ considered whether the opinions of Dr. White and Dr. Limbird were consistent with the record. (DE 12, p. 20). Therefore, the record provides substantial evidence that the ALJ properly weighed the opinions of the Plaintiff's treating physicians, Dr. White and Dr. Limbird, and properly explained the weight that she assigned.

### 3.      Dr. Huang and Ms. Garland

The Plaintiff argues that the ALJ failed to state how much weight she assigned to the opinion of Dr. Huang and failed to properly weigh Dr. Huang's opinion. (DE 16-1, p. 9). The

parties also dispute to what extent the ALJ should have incorporated the findings of Ms. Garland into the RFC given that the ALJ assigned Ms. Garland's September 17, 2010 report "significant weight." (DE 12, p. 20). In the Plaintiff's Reply, he argues that "it seems practical that an opinion which was given significant weight was given that level of weight because it was consistent with the record and should be incorporated into the RFC." (DE 26, p. 5).

Again, when an ALJ is determining what weight to assign to a source, he or she always considers the 20 C.F.R. §§ 404.1527 and 416.927 factors, regardless of whether that source is a treating or examining source. *Gayheart*, 710 F.3d at 376.

Here, the record also shows that that the ALJ properly considered the 20 C.F.R. §§ 404.1527 and 416.927 factors in regard to Dr. Huang. For example, it was apparent that Dr. Huang was a consultative examiner, and as such there was an examining but not treating relationship. Moreover, the ALJ considered the consistency of the opinion with the record, noting that Dr. Huang observed "a mild speech impediment but did not diagnose him with such. However, it was observed that the [Plaintiff] did not have a problem with stuttering at the hearing." (DE 12, p. 19). The ALJ also noted that Dr. Huang observed that the Plaintiff's limp improved upon leaving the office. (DE 12, p. 21). Therefore, the record provides substantial evidence that the ALJ considered the relevant factors in determining what weight to assign to Dr. Huang's opinion. The fact that the ALJ did not explicitly state a weight does not negate this.

The record also shows that the ALJ did incorporate the findings of Ms. Garland into the RFC and did consider the 20 C.F.R. §§ 404.1527 and 416.927 factors, particularly whether the medical evidence supported Ms. Garland's opinion and whether her opinion was consistent with the record. Again, this was an examining and not a treating relationship. Further, the ALJ noted that Ms. Garland questioned whether the Plaintiff was exaggerating his symptoms. (DE 12, p.

20). The ALJ noted that Ms. Garland provided a range of the Plaintiff's ability to persist and concentrate; from moderately to markedly limited. (DE 12, p. 484). In light of the reported exaggeration, the ALJ found that the Plaintiff's ability was "moderately, *rather than* markedly limited." (DE 12, p. 20). Therefore, the record shows that the ALJ did incorporate the findings of Ms. Garland into the RFC. Moreover, Ms. Garland noted that the Plaintiff stuttered and had "borderline to low average intellectual functioning." (DE 12, p. 484). She noted that the Plaintiff "may have moderate if not marked limitation in ability to do complex and detailed work." (DE 12, p. 484). In the RFC, the ALJ limited the Plaintiff's RFC to "simple work with simple instructions, and occasional change in the workplace." (DE 12, p. 18). The further extent or more favorable fashion in which she could have incorporated Ms. Garland's findings is unclear. Therefore, the record provides substantial evidence that the ALJ incorporated Ms. Garland's assessment into the RFC and appropriately analyzed what weight to assign to Ms. Garland's opinion.

### D.      The ALJ failed to evaluate and assess the Plaintiff's credibility.

The Plaintiff argues that the ALJ failed to "perform a proper credibility analysis," thereby violating SSR 96-7P. The Plaintiff argues that the ALJ placed excessive emphasis on and mischaracterized the Plaintiff's activities." (DE 16-1, p. 17).

Pursuant to SSR 96-7P and 20 C.F.R. §§ 404.1529(c) and 416.929(c), an ALJ uses a 2-part test to evaluate a Plaintiff's symptoms. The first step is for the ALJ to "consider whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the . . . symptoms." SSR 96-7P, 1996 WL 374186, at *2. The second step is for the ALJ to "evaluate the intensity, persistence, and limiting effects of the . . . symptoms to determine the extent to which the symptoms limit the individual's ability to do basic

work activities." SSR 96-7P, 1996 WL 374186, at *2. A Plaintiff's symptoms will limit his ability to do basic work activities to the extent that the symptoms can reasonably be accepted as consistent with objective medical evidence. SSR 96-7P, 1996 WL 374186, at *2. However, if objective evidence does not reflect the severity of symptoms, the ALJ requires other evidence to determine the credibility of a Plaintiff's statements. SSR 96-7P, 1996 WL 374186, at *3. In those cases, the ALJ considers: (1) daily activities; (2) location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of medication; (5) treatment; (6) measures to relieve pain or symptoms; and (7) functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c). When an "ALJ [has] considered the evidence . . . and provided specific reasons for his credibility findings, his decision is entitled to great deference and is supported by substantial evidence." *Anthony v. Astrue*, 266 F. App'x 451, 460 (6th Cir. 2008) (unpublished opinion) (citation omitted).

Here, the record shows that he ALJ completed the first step and found that the Plaintiff had the impairments of degenerative joint disease of the knees, degenerative disc disease of the lumbar spine, mild osteoarthritis of the shoulders, obstructive sleep apnea, morbid obesity, speech impairment, and dysthymic disorder. (DE 12, p. 15). The record also shows that the Plaintiff completed the second step. She considered the Plaintiff's daily activities, noting that although he testified that he could not do anything, he had reported shortly after his alleged onset date that he did laundry, cooked, and shopped. (DE 12, p. 17). The ALJ noted the location and duration of the Plaintiff's symptoms, documenting the Plaintiff's problems with his right arm that he had experienced since August of 2010, the problems with his knees and his left arm, and his lingering numbness in his pinky finger and ring finger as well as his difficulty gripping. (DE 12, p. 18). She also noted the sharp, tingling pain in his back. (DE 12, p. 19). She noted his

reports of "lack of sleep, fatigue, poor concentration, thoughts of suicide, and indecisiveness." (DE 12, p. 20). She documented the Plaintiff's report that if he stood, sat, or walked for too long, that this would precipitate his pain. (DE 12, p. 19). She documented that the Plaintiff reported no side effects from his medication. (DE 12, p. 19). She noted the Plaintiff's surgical treatments. (DE 12, p. 18). She also noted that he used a cane to improve his balance. (DE 12, p. 19). Finally, she noted the Plaintiff's report that he could only lift 10 pounds, that his knees do not work, that he was unable to lift due to his right shoulder problems, and that his limitations necessitated his sister helping him with everything, including bathing. (DE 12, pp. 18-19).

After examining these factors, the ALJ explained that the Plaintiff's reports were not credible. She explained that "his activities of daily living he described at his hearing were very inconsistent with what he reported elsewhere in the record" and that these were "in stark contrast to his testimony in which he indicated he could do nothing." (DE 12, p. 21). The ALJ also noted the inconsistency that the plaintiff "told the consultative examiner that he gave up his license after he had a car accident" although he testified that he never had a driver's license. (DE 12, p. 21). The ALJ also noted the Plaintiff's unremarkable physical examinations and the consultative examiner who reported that the Plaintiff's limp "improved when he was observed leaving the office." (DE 12, p. 21). Therefore, the record provides substantial evidence that the ALJ considered the record, explained the reasoning behind her credibility finding, and based her finding on more than the Plaintiff's activities.

## V.     Conclusion

There is substantial evidence within the record to support the ALJ's findings of fact and the ALJ applied the correct legal standard.

# VI.    Recommendation

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that the Plaintiff's Motion (DE 16) be **DENIED**, and the Commissioner's decision be **AFFIRMED**.

The parties have fourteen (14) days, after being served with a copy of this Report and Recommendation (R&R) to serve and file written objections to the findings and recommendation proposed herein.  A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 149 *reh'g denied*, 474 U.S 1111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).


**ENTERED** this 29th day of December, 2014.

s/Joe B. Brown                                      
Joe B. Brown
U.S. Magistrate Judge